# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re:<br>**MARTIN B. KRIBS and**<br>**BLAIRE B. KRIBS,**<br><br>                        **Debtors.** | **Bankruptcy Case**<br>**12-40814-JDP** |

_____

| | |
|---|---|
| **R. SAM HOPKINS, Trustee,**<br><br>                        **Plaintiff,**<br><br>**vs.**<br><br>**MARTIN B. KRIBS and**<br>**BLAIRE B. KRIBS,**<br><br>                        **Defendants.** | **Adv. Proceeding**<br>**No. 14-8002-JDP** |

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

James A. Spinner, Pocatello, Idaho, Attorney for Plaintiff.

Ryan E. Farnsworth, AVERY LAW OFFICE, Idaho Falls, Idaho,
Attorney for Defendants.

MEMORANDUM OF DECISION – 1

## *Introduction*

This adversary proceeding was commenced by chapter 7[1] trustee R. Sam Hopkins ("Plaintiff") seeking an order revoking the discharge of debtors Blaire Blackwelder Kribs and Martin Brock Kribs ("Defendants") because they allegedly failed to adequately disclose important information about their assets in their bankruptcy schedules.  The Court conducted a trial on September 25, 2014, after which it ordered post-trial briefs to be filed.   The Court has considered the testimony, evidence, and argument presented during the trial, as well as the briefs submitted by the parties. This Memorandum constitutes the Court's findings of fact and conclusions of law, and resolution of the issues.  Rule 7052.

## *Findings of Fact*

Defendants acquired an ownership interest in at least four separate companies in approximately 2004-2006, most of which were involved in

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 2

some aspect of real estate development: Western Heritage LLC ("Western Heritage"), Idaho Ranch Subdivision LLC ("Idaho Ranch"), Team A D International LLC ("Team A D"), and Trestle Creek CM LLC ("Trestle Creek").[2] The bust in the real estate market apparently hit Defendants hard, and by 2010, they had serious financial difficulties. To that end, on July 15, 2010, Defendants transferred their interest in Idaho Ranch to the remaining members of the company in exchange for a payment of $48,250. Exhs. 105; 108. On November 18, 2010, Defendants reduced their interest in Team A D from 49% to 24.5%, in exchange for a monthly advance – a salary, essentially – of $10,500.[3] Exh. 102.

On June 5, 2012, Defendants filed a chapter 7 bankruptcy petition,

---

[2] From the evidence presented, it appears that Defendant Martin Kribs signed the business entity-related documents. It is unclear what role, if any, Defendant Blaire Kribs played in the business affairs of the companies at issue.

[3] The proof did not establish how many monthly payments were made to Defendants, but Martin Kribs' testimony indicated that the company was not profitable, and the other members requested in 2014 that he turn over his remaining shares or the company would be dissolved.

MEMORANDUM OF DECISION – 3

and Plaintiff was appointed as trustee.  Bk. Dkt. No. 1.[4]  The § 341(a)

meeting of creditors took place on July 18, 2012 ("July 341 meeting"), at

which Defendants appeared and testified.  Exh. 200.  At the July 341

meeting, Plaintiff noted what he considered to be several deficiencies in

Defendants' bankruptcy filings, including that their schedules and

Statement of Financial Affairs ("SOFA") did not disclose two trailers which

Plaintiff had identified as being titled in Defendants' names:  a 2007 Logan

stock trailer and a 2006 19 foot C & C trailer, both of which had been sold

the previous year.  *Id*.; Exh. 111.  Plaintiff also questioned Martin Kribs

about the transfer of ten acres of real property as listed in the SOFA.

Martin explained that he transferred the property to his father in

September 2011, to satisfy a loan from his father for which the property

had been pledged as security.  *Id*.

     A continued meeting of creditors was scheduled to occur prior to

entry of the Defendants' discharge.  Plaintiff asked that Defendants do the

---

[4]  The docket in the underlying bankruptcy case, Case No. 12-40814-JDP
will be referred to as "Bk. Dkt.", while the adversary proceeding docket, Case
No. 14-8002-JDP, will be referred to as Adv. Dkt.

MEMORANDUM OF DECISION – 4

following prior to the continued meeting:  1) verify Martin's Social Security number; 2) produce copies of Defendants' 2009 and 2010 tax returns; 3) amend their schedules to show the transfers of the trailers; and 4) produce the documents relating to the transfer of the 10 acres.

At the August 22, 2012 continued meeting of creditors ("August 341 meeting"), Plaintiff noted that Defendants had not given him certain necessary documents, and that other documents they had provided were incomplete.  Exh. 200.  More specifically, Plaintiff indicated he had not received a settlement statement for the sale of the ten acres of property, and that Defendants had produced only the first two pages of their 2009 and 2010 tax returns.  *Id*.  However, Defendants had brought a complete copy of their 2010 return with them to the August 341 meeting, which they gave to Plaintiff.  *Id*.

After briefly perusing Defendants' complete 2010 tax return during the August 341 meeting, Plaintiff noted that it listed interests in the four different companies identified above, and it showed a $433,353 loss from Idaho Ranch.  *Id*.  In response to Plaintiff's questions, Defendant Martin

MEMORANDUM OF DECISION – 5

Kribs explained that he was a partner in a ranch development in Teton

Valley, Idaho, which lost much of its value as a result of the economic

downturn. *Id.* Because he could not keep up with payments, the other

partners required him to sign over his interest, which triggered the tax

event. *Id.*

At the conclusion of the August 341 meeting, Plaintiff requested the

following documents from Defendants: 1) complete copies of the 2009 and

2010 tax returns; 2) a copy of the promissory note for the $50,000 loan from

Martin's father listing the ten acre parcel as security as well as the

quitclaim deed of the parcel; and 3) the documents surrounding a split of

the ten acre parcel from the remainder of Defendants' property. *Id.*

Plaintiff did not ask for further documentation regarding the business

entities he noticed on Defendants' 2010 tax return at that time.

On January 11, 2013, Defendants' discharge was entered without

opposition by Plaintiff.[5]  However, it is clear that Plaintiff was unsatisfied

---

[5]  Pursuant to Rule 4004(a), objections to discharge must be filed no later than 60 days after the first date set for the meeting of creditors.  In this case, as noted, the July 341 meeting was held on July 18, 2012.  Bk. Dkt. No. 2.  Thus, the

MEMORANDUM OF DECISION – 6

with the information he had received from them, because on March 21,

2013, Plaintiff filed a motion for turnover seeking information and

documents, which was unopposed and later granted by the Court.  Bk.

Dkt. Nos. 36 - 38.  Notably, the turnover motion recited that Defendants

had "wrongfully refused to surrender" the requested information to

Plaintiff.  Bk. Dkt. No. 36.  The motion specifically requested: 1) a copy of

the 2011 Depreciation schedule used in preparing the Trestle Creek tax

returns; 2) documentation concerning the consignment sale of a truck

found on the Trestle Creek 2010 and 2011 tax returns; 3) a copy of the 2009

and 2010 Idaho Ranch tax return; 4) documentation concerning the

$433,363 draw from Idaho Ranch; 5) an accounting of how the $48,250 from

the sale of Defendants' interest in Idaho Ranch was spent, *see* Exh. 102; 6) a

---

deadline for Plaintiff to object to entry of Defendants' discharge was September
16, 2012.  *Id*.  However, the actual entry of the discharge was delayed in this case
because Defendants had not completed their required financial management
course.  Bk. Dkt. Nos. 23-26; 28.  A certificate of completion for the course was
filed on November 30, 2012, Bk. Dkt. No. 29, but the wrong signature page had
been attached to it, prompting the Clerk to enter several entries for corrective
action on the docket, as well as to note that entry of the discharge would be
withheld until the correction was made.   Over a month later, on January 2, 2013,
the correct signature page was finally docketed .  Bk. Dkt. No. 33.

MEMORANDUM OF DECISION – 7

copy of the 2010 tax returns for Western Heritage; 7) documentation

regarding a $154,810 entitlement expense listed on the Western Heritage

2009 tax returns; 8) documentation of payments made by Idaho Ranch on a

note owed to Western Heritage; 9) a copy of the amended SOFA listing

Defendants' safe deposit box and a description of the contents; and 10)

requests for information regarding certain checks and deposits for specific

bank accounts.  Bk. Dkt. No. 36.

When he did not receive all of the information sought from them, on

January 3, 2014, Plaintiff commenced this adversary proceeding to revoke

Defendants' discharge pursuant to § 727(d)(1).  Adv. Dkt. No. 1.  The

complaint asserted two claims for relief.  The first claim alleged that

Defendants had not complied with the Court's turnover order**;** that a

number of documents had never been produced; an accounting had not

been made for how the $48,250 payment from the sale of the Idaho Ranch

interest was spent; financial institution and account number information

had not been provided to Plaintiff; and, finally, that the SOFA had not been

amended to disclose a safe deposit box.  The second claim for relief alleged

MEMORANDUM OF DECISION – 8

that Defendants's schedules failed to disclose:  1) their interest in Team A

D; 2) their interest in Trestle Creek; 3) their  interest in Idaho Ranch, and

that Defendants had failed " to provide an accounting of, or information

on, financial accounts in which money was deposited and withdrawn"; 4)

their interest in Western Heritage; 5) their transfers of the trailers; and 6)

the safe deposit box.  Dkt. No. 1.  The complaint alleged that Defendants'

omission of this information was prejudicial and would have provided a

basis for Plaintiff to seek a denial of Defendants' discharge if the details

had been known to Plaintiff.   The complaint  further alleged that, based

upon Defendants' actions, they had obtained their discharge through

fraud.   Prior to trial, Plaintiff withdrew the first claim for relief.  Adv. Dkt.

No. 10.  Thus, only the allegations of the second claim were addressed at

the trial.

On October 20, 2014, over ten months after the adversary proceeding

was commenced, and nearly a full month after trial, Defendants amended

their SOFA and schedule B.  The amended SOFA included new disclosures

concerning the following:  1) the September 2011 sale of a 2007 stock trailer

MEMORANDUM OF DECISION – 9

to Harley Wilcox for $1,000 plus a saddle; 2) the 2011 sale of a 2006 C & C

trailer for $10,000 to Paul Raub; 3) the November 2010 transfer of

Defendants' partial interest in Team A D which reduced their interest from

49% to 24.5% in exchange for a monthly salary; 4) the transfer of

Defendants' 30% interest in Idaho Ranch for $48,250; 5) the ownership of a

safe deposit box at U.S. Bank; and 6) Defendants' interest in Western

Heritage, Idaho Ranch, Team A D and Trestle Creek.  That same day,

Defendants amended schedule B to disclose a 50% ownership interest in

Western Heritage, a 24.5% interest in Team A D, and an interest in Trestle

Creek.  Bk. Dkt. No. 80.

## Conclusions of Law and Disposition

A bankruptcy discharge is intended to benefit only the "honest but

unfortunate debtor."  *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1104 (9th

Cir. 2005) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).  Should a

discharge be entered, and thereafter facts come to light which suggest that

the debtor was undeserving, the Code provides a means by which the

discharge may be revoked.  § 727(d).

MEMORANDUM OF DECISION – 10

The Code imposes affirmative duties upon any debtor who files a bankruptcy petition, including the duty to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate . . . ." § 521(a)(4).  Plaintiff's complaint alleges that Defendants obtained a discharge without properly disclosing important information about their assets and financial transactions, and therefore, the discharge should be revoked.  Plaintiff relies upon § 727(d)(1), which provides:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if —
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge[.]

To obtain a revocation of Defendants' discharge under this provision, Plaintiff must prove two elements:  1) that the discharge was obtained though the fraud of the Defendants; and 2) that Plaintiff was unaware of such fraud until after the granting of the discharge.  *Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 77 (Bankr. D. Idaho 2008).  All essential facts must be

MEMORANDUM OF DECISION – 11

proven by a preponderance of the evidence.  *Grogan*, 498 U.S. at 284;

*Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 730 (9th Cir. BAP 1999);

*Hopkins v. Hugues (In re Hugues)*, 349 B.R. 72, 78 (Bankr. D. Idaho 2006).

The Ninth Circuit has held that the discharge revocation provisions are

construed liberally in favor of debtors, and strictly against those objecting

to discharge.  *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342

(9th Cir. 1986); *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 924

(9th Cir. BAP 1994); *In re Hugues*, 349 B.R. at 77-78.

    1.  <u>Fraud in Fact</u>

    The first element of § 727(d)(1) requires proof "that the debtor

committed 'fraud in fact.'  That is, fraud must be shown to have occurred

in the procurement of the discharge, and sufficient grounds must have

existed which would have prevented the discharge."  *In re Fehrs*, 391 B.R.

at 77 (quoting *In re Hugues*, 349 B.R. at 78 (citing *Bowman*, 173 B.R. at 925)).

However, "[b]ecause a debtor is unlikely to testify directly that his intent

was fraudulent, the courts may deduce fraudulent intent from all the facts

and circumstances of the case."  *In re Fehrs*, 391 B.R. at 78 (quoting *Devers v.*

MEMORANDUM OF DECISION – 12

*Bank of Sheridan Montana (In re Devers),* 759 F.2d 751, 754 (9th Cir. 1985)); *In re Hugues,* 349 B.R. at 78.

As noted above, § 727(d) refers to § 727(a), which in turn provides that a debtor shall receive a discharge unless the debtor has engaged in certain conduct. In particular, § 727(a) denies a discharge to any debtor who knowingly and fraudulently makes a false oath in or in connection with the bankruptcy case. *See* § 727(a)(4)(A). *In re Hugues*, 349 B.R. at 78.

In *In re Fehrs,* the issue was whether the debtor's lack of disclosure in his schedules concerning a prebankruptcy transfer of real property, and his alleged false declaration of residency as to a second parcel, warranted the denial of the debtor's discharge. Based on the facts presented, the trustee therein alleged that the debtor had knowingly and fraudulently made false statements that would defeat the debtor's right to discharge under § 727(a)(4)(A). This Court agreed, noting that the requisite false oath to deny a discharge under § 727(a)(4)(A) may involve "either an affirmatively false statement or an omission from the debtor's schedules." *In re Fehrs*, 391 B.R. at 78 (quoting *Searles v. Riley (In re Searles)*, 317 B.R. 368,

MEMORANDUM OF DECISION – 13

377 (9th Cir. BAP 2004)).  Indeed, Collier explains that "a common instance

of 'false oath' is when a debtor declares that the schedule of property is

'true and correct' and it appears that the debtor has knowingly and

fraudulently omitted assets from it."  *In re Fehrs*, 391 B.R. at 78 (quoting 6

COLLIER ON BANKRUPTCY ¶ 727.04[2] at 727-42).

Here, as in *In re Fehrs*, Defendants' schedules and SOFA contain

material omissions.  Plaintiff credibly argues that, because of the nature

and number of undisclosed assets and transactions, Defendants acted

knowingly and fraudulently in failing to report these important facts about

their financial affairs.  Moreover, Defendants' lack of diligence in

amending their schedules suggests they lacked the sort of genuine intent

to fully disclose the relevant facts about their financial dealings to entitle

them to a discharge.  In sum, on this record, the Court could find that

Plaintiff has carried his burden of showing that Defendants engaged in

fraud to obtain their discharge.

2.  <u>Plaintiff's Lack of Knowledge of the Alleged Fraud</u>

Though Plaintiff has shown that Defendants knowingly failed to

MEMORANDUM OF DECISION – 14

disclose material information about their financial affairs in their bankruptcy filings, Plaintiff has not established the other requisite element to obtain a discharge revocation under § 727(d) in this case.

As the Code expressly provides, an action under § 727(d)(1) requires a showing that the party seeking to revoke the debtor's discharge lacked knowledge of the claimed fraud until after entry of that discharge. § 727(d)(1); *In re Dietz*, 914 F.2d 161, 163 (9th Cir. 1990); *In re Hugues*, 349 B.R. at 78 (citing *In re Bowman*, 173 B.R. at 925) (noting that the plaintiff must persuade the Court that he or she was unaware of the fraud at the time the discharge was granted.)  This lack of knowledge is "essential" to establishing Plaintiff's claim.  *In re Fehrs*, 391 B.R. at 80 (quoting 6 COLLIER ON BANKRUPTCY ¶ 727.15[3] at 727.15[3] at 727-76 (citing *In re Bowman*, 173 B.R. at 922)).  "[A] party requesting revocation of a discharge has the burden of proving its lack of knowledge of the fraud before discharge, and a failure to carry this burden is fatal to the party's case."  *In re Fehrs*, 391 B.R. at 80 (quoting 6 COLLIER ON BANKRUPTCY ¶ 727.15[3] at 727-76).

In *In re Fehrs*, the Court noted that the "knowledge" referred to in

MEMORANDUM OF DECISION – 15

§ 727(d)(1) exists "when the party seeking revocation first becomes aware of facts such that he is put on notice of a possible fraud."  Thereafter, the potential plaintiff must show "due diligence in investigating and responding to possible fraudulent conduct once he or she is aware of it or is in possession of facts such that a reasonable person in his or her position should have been aware of a possible fraud."  *In re Fehrs*, 391 B.R. at 80; *see also* COLLIER at ¶ 727.15[3] ("[A] creditor or trustee is required to have exercised diligence in investigating the facts during the case, especially after having been put on notice of possible fraud.").  If the party elects to wait until after discharge to investigate, he or she risks loss of the ability to seek relief under § 727(d)(1).  *In re Bowman*, 173 B.R. at 925 (citing *Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 888 (8th Cir. 1991)).

Under these authorities, Plaintiff's discharge revocation complaint must be dismissed in this case if, before discharge, this trustee "[knew] facts such that he or she [was] put on notice of a possible fraud."  *In re Fehrs*, 391 B.R. at 80-81 (citing *In re Bowman*, 173 B.R. at 925).  Indeed, in *In re Fehrs*, the plaintiff-creditor knew that the debtor had failed to disclose an

MEMORANDUM OF DECISION – 16

interest in certain property because the plaintiff had financed its purchase.

The Court held that knowledge of those facts put the plaintiff on notice

and required that it act diligently in investigating the possible fraud by the

debtor.  *Id*. at 81.  But as the evidence in that case was not clear concerning

when the plaintiff reviewed the debtor's petition, schedules, and

statements, and because it was plaintiff's burden under § 727(d)(1) to

prove the lack of knowledge of the fraud prior to the entry of discharge as

an element of plaintiff's claim for relief, the failure to satisfy that burden

meant that the discharge revocation was unavailable.

Here, on August 22, 2012, over four months prior to the entry of

their discharge, Plaintiff knew that Defendants' 2010 tax return indicated

they owned an interest in four different limited liability companies that

were not listed on Defendants' SOFA or schedule B.  This information

caused him to actively investigate and seek information about those

companies, as evidenced by the eventual turnover motion filed with the

Court.  But though he lacked this important information, Plaintiff

permitted the discharge to be entered.

MEMORANDUM OF DECISION – 17

Plaintiff's complaint further alleges that Defendants' discharge should be revoked because they failed to properly disclose the transfer of the two trailers to others.  However, again, Plaintiff questioned Defendants about those transfers at the July 341 meeting.  That he was aware that the trailers were titled in Defendants' names was thus enough to trigger his duty to diligently investigate, and absent satisfactory response from Defendants, constituted good grounds to prevent entry of the discharge.

Finally, as another basis for revoking Defendants' discharge, Plaintiff cites their failure to disclose the existence of the safe deposit box. There is no evidence in the record from which the Court can determine when Plaintiff first became aware that Debtors' possibly had a safe deposit box.  While there was no apparent mention of this topic at either §341(a) meeting, Plaintiff demanded information about it in the motion for turnover.  Since it is unclear when Plaintiff discovered the existence of the safe deposit box, his proof fails on this claim for relief, too, because he has not shown that he lacked knowledge prior to entry of Defendants'

MEMORANDUM OF DECISION – 18

discharge.[6]

The "lack of knowledge" element in § 727(d)(1) promotes an important policy. If there is reason to believe that a debtor has not been forthcoming about the details of his or her financial affairs, a discharge should not be entered. However, a debtor is entitled to know whether he or she will receive a discharge, and the financial fresh start it entails, promptly. To ensure this happens, and to discourage delay in the finality of discharges, Rule 4004(a) requires that an objection to a debtor's discharge be filed not more than 60 days after the first date for the creditor's meeting. A trustee or creditor must therefore act diligently if he or she believes the debtor may not have properly disclosed material financial information. If a proper investigation is undertaken, but the debtor does not adequately respond to the trustee's inquiries, Rule

---

[6] Defendant Martin Kribs explained at trial that he did not believe he needed to disclose the safe deposit box in the SOFA, because Question 12 asks about safe deposit boxes "in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of the case." He testified that the box had been empty since 2008. Given Plaintiff's failure to prove other elements of his claim, whether Defendant's explanation of his failure to disclose the existence of the box is adequate need not be addressed.

MEMORANDUM OF DECISION – 19

4004(b)(1) provides that, before the bar date for filing objections to

discharge, upon request, the Court can "for cause" extend that deadline.

When a trustee (or the U.S. Trustee or a creditor, for that matter) lacks the

ability to decide whether the debtor has failed to properly disclose his or

her financial affairs before entry of discharge, Rule 4004(b)(2) allows the

trustee to seek an extension of time to object to discharge under § 727(a) if

the relevant facts are such that, "if learned after the discharge, would

provide a basis for revocation under § 727(d) . . . ."  Under this rubric, it is

only in those cases where a debtor's misdeeds are unknown to the trustee

prior to the entry of a discharge that the Code endorses revocation of

discharge.

Here, Plaintiff sought information from Defendants of a kind to

determine whether they had adequately disclosed details of their financial

dealings in their schedules.  Indeed, Plaintiff eventually went so far as to

request an order from the Court compelling Defendants to provide the

information and documents.  When Plaintiff did not receive proper

answers to his questions, or sufficient documentary explanations, instead

MEMORANDUM OF DECISION – 20

of asking the Court to delay entry of discharge, and to extend the time for

him to object to discharge, Plaintiff waited.  In the meantime, Defendants'

discharge was entered.   While Plaintiff eventually uncovered facts which

might constitute a basis to deny Defendants a discharge, Plaintiff's lack of

diligence prevents him from securing the relief he seeks.[7]

### *Conclusion*

While there is credible evidence that Defendants knowingly and

fraudulent omitted material information from their sworn bankruptcy

schedules and SOFA, Plaintiff was aware of the potential fraud, and did

not timely act to prevent the entry of Defendants' discharge.  As a result,

the Code offers Plaintiff no remedy.  A judgment will be entered in favor

of Defendants.

---

[7] Defendants are fortunate to save their discharge.  In addition to their
lack of diligence in complying with Plaintiff's requests for information, the
efforts of their counsel were less than helpful.  Prompt attention to Plaintiff's
inquiries, and better advice and assistance from Defendants' lawyers, would
have likely avoided this litigation.

MEMORANDUM OF DECISION – 21

Dated:  January 7, 2015

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 22